## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gil Borrero, | |
| Plaintiff, | Civil No. 3:19-cv-01306-TOF |
| v. | |
| Andrew Saul, Commissioner of Social Security, | |
| Defendant. | November 30, 2020 |

## RULING ON PENDING MOTIONS

### I.   INTRODUCTION

The Plaintiff, Gil Borrero, is a former construction worker who broke his ankle on April 18, 2015.  In May 2015 he applied for Title XVI Supplemental Security Income ("SSI") benefits, claiming that he had been disabled by the ankle fracture as well as by chronic back, neck, and shoulder pain.  (R. 322, 333.)  After a series of contentious hearings in 2018, an Administrative Law Judge ("ALJ") found that he was not disabled. (R. 84.)  The Plaintiff now appeals and seeks an order "reversing the final decision of the Commissioner . . . as it is contrary to law and against the evidence."  (ECF No. 28.)  The Defendant, Social Security Commissioner Andrew Saul ("Commissioner"), moves for an order affirming the decision.  (ECF No. 33.)

The Plaintiff makes five principal arguments on appeal.  First, he claims that he was "denied a fair hearing" because his former lawyer did not effectively represent him.  (ECF No. 28-2, at 1-2.)  Second, he contends that the ALJ erred in failing to consider his mental impairments— and he makes an unusual claim that his own obstructionist behavior at the disability hearing should be regarded as evidence of such an impairment.  (*Id.* at 2-14.)  Third, he argues that the ALJ erred

in concluding that he is capable of light work notwithstanding his ankle and other impairments. (*Id.* at 14-19.)  Fourth and relatedly, he argues that the ALJ violated the treating physician rule in assigning less than controlling weight to the opinions of his treating podiatrist, APRN, and physician assistant.  (*Id.* at 19-25.)  Fifth and finally, he says that the ALJ erred in concluding that his back and neck impairments were non-severe.  (*Id.* at 25.)  For his part, the Commissioner argues that the ALJ's decision was supported by substantial evidence and, therefore, should be affirmed. (ECF No. 33, at 1.)

The Court rejects the Plaintiff's first and second arguments, but it accepts the third.  To conclude that a claimant retains the residual functional capacity ("RFC") to do "light work" is to conclude that he can lift up to twenty pounds at a time, and he can frequently lift and carry up to ten pounds.  20 C.F.R. § 416.967(b).  To conclude that a claimant can do "light work" is also to conclude that he can stand or walk "most of the workday."  SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983).  In this case, the ALJ did not have a sufficient basis for concluding that the Plaintiff could do these things in spite of his ankle and other impairments.  (*See* discussion, Section III.C *infra*.)  The Court therefore **GRANTS** the Plaintiff's motion to reverse in part and **DENIES** it in part,[1] **DENIES** the Commissioner's motion to affirm, **VACATES** the Commissioner's decision, and **REMANDS** the case to the Commissioner for further proceedings consistent with this opinion. In light of this disposition, the Court need not reach the Plaintiff's remaining arguments, as discussed in Section IV below.

---

[1]     As discussed in Section IV below, the motion is granted to the extent that it seeks reversal and remand for further development of the administrative record, but denied to the extent that it seeks reversal and remand solely for an award and calculation of benefits.

## II.  BACKGROUND

On April 18, 2015, the Plaintiff fell down a staircase and fractured his ankle.  (Pl.'s Stmt. of Mat. Facts, ECF No. 28-1, at ¶ 5;[2] R. 773.)  His fracture was no ordinary break, but rather a comminuted fracture of both the fibula and tibia.  (Pl.'s Stmt. of Mat. Facts, ECF No. 28-1, at ¶ 5.)  He was admitted to St. Francis Hospital that day (R. 763), but his doctors could not operate right away.  (R. 767.)  The next afternoon, Dr. Christina Kabbash performed a closed reduction external fixation procedure.  (R. 766-67.)  St. Francis discharged him on April 20, 2015.  (R. 772.)

On May 8, 2015, the Plaintiff applied for Supplemental Security Income ("SSI") benefits.  (R. 322.)  He alleged the date of his fall as the date of onset of his disability.  (*Id.*)  When asked to list his illnesses, injuries or conditions, he identified a "fractured fibula [and] fractured tibia," and he added that he also suffered from "shoulder pains, chronic back pain [and] neck pain." (*Id.*.)  He did not then claim to be suffering from any mental illnesses or conditions.  (*Id.*)

The Social Security Administration ("SSA") denied the Plaintiff's application for benefits on December 29, 2015.  (R. 330.)  The Plaintiff requested reconsideration, but denied developing "any new physical or mental conditions" in the meantime.  (R. 334.)  The SSA rejected his claim on reconsideration (R. 348), and the Plaintiff requested a hearing before an ALJ.  (R. 361.)

ALJ John Noel attempted to convene a hearing on March 1, 2018.  (R. 268.)  The Plaintiff requested a postponement so he could obtain counsel.  (R. 269.)  ALJ Noel granted the postponement, and the Plaintiff returned for a hearing on August 7, 2018, this time represented by Attorney Angelo Cicchiello.  (R. 208.)  Yet this second hearing did not go forward either, because

---

[2]     The Commissioner filed a statement of material facts that largely "adopts the Statement of Material Facts submitted by the Plaintiff," with certain "additions."  (ECF No. 33-1.)  Unless otherwise noted, all citations to statements of material facts in this ruling are to facts that the Court understands to be undisputed.

although he agreed that he could "communicate in English" (R. 209), the Plaintiff nevertheless requested a Spanish-language interpreter. (*Id.*) ALJ Noel therefore rescheduled the hearing for September 6, 2018. (R. 211.)

At the September 6, 2018 hearing, the ALJ took sworn testimony from the Plaintiff through a Spanish interpreter, Jenny Rivera-Flores. (R. 163, 165-73.) The Plaintiff resisted several of the ALJ's questions on relevance grounds, asking "what does that have to do with this right now?" (R. 171.) Evidently frustrated by the questioning, the Plaintiff left the hearing room before the ALJ finished his examination. (R. 173.) Attorney Cicchiello followed him into the hallway and "asked him to calm down and relax," but he would not return. (*Id.*) The ALJ then took testimony from a vocational expert, Larry Takki. (R. 175-81.) Before concluding for the day, the ALJ offered the Plaintiff "an opportunity to come back for a supplemental hearing." (R. 181-82.) Attorney Cicchiello accepted the invitation and scheduled a supplemental hearing for September 18, 2018. (R. 94.)

At the supplemental hearing, the Plaintiff continued to dispute the relevance of some questions, and he evasively answered others. For example, when the ALJ asked, "in a typical week, where are some of the places you might walk to?" the Plaintiff answered "because I have never had to pay any attention to where I go, I really do not know." (R. 98.) He claimed not to remember the last time he went to the grocery store, because he "wasn't paying attention to going and buying groceries." (R. 99.) When asked what he did with his day, the Plaintiff responded, "these questions, I don't find the logic of why you're asking me." (R. 102.) Yet while he still disputed the relevance of the ALJ's questions, this time he did not leave the room, as he had done on September 6th. The ALJ was able to finish the hearing, and he advised the Plaintiff that he would issue a written ruling. (R. 105.)

4

The ALJ issued an unfavorable decision on December 3, 2018. (R. 70.) At Step One of the five-step sequential evaluation process,[3] the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the application date of May 8, 2015. (R. 75.) At Step Two, the ALJ concluded that the Plaintiff suffered from the severe impairment of a "fracture of the right lower extremity-post surgical intervention." (R. 76.) The ALJ also found that the Plaintiff suffered from the non-severe impairments of "degenerative disc disease of the cervical and lumbar spine, bilateral knee pain and left shoulder pain." (*Id*.) So far as his opinion discloses, the ALJ did not consider any mental impairments at Step Two.

At Step Three, the ALJ found that the Plaintiff's impairments or combination of impairments did not meet or equal a listed disability enumerated in 20 C.F.R. § 404, Subpart P., App'x 1. (R. 76-77.) Next, the ALJ determined that the Plaintiff retained the following residual functional capacity:

> [T]o perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds.

---

[3]     To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses an RFC to determine whether the claimant can perform any of her "past relevant work despite the impairment . . . ." *Id.* At Step Five, the ALJ assesses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proving her case at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

> The claimant can occasionally balance, kneel, crouch and crawl.  He can frequently stoop.  The claimant requires a cane for ambulation.

(R. 77.)  At Step Four, the ALJ found that the Plaintiff was not capable of performing his past relevant work as a construction laborer.  (R. 82.)  Finally, at Step Five, the ALJ relied on the testimony of the vocational expert to find there were jobs in the national economy that the Plaintiff could perform, including subassembler of electronics, ticket taker, and price marker.  (R. 83.)  He therefore determined that the Plaintiff was not disabled from the application date of May 8, 2015. (R. 84.)

The Plaintiff appealed to the Appeals Council.  (R. 560.)  The council affirmed the ALJ's decision (R. 1-4), and the Plaintiff timely appealed to this Court.[4]   As noted above, he raises five principal arguments in his brief.  The Court will address each argument in turn, setting forth additional background facts as necessary.

## III.   DISCUSSION

### A.    The Plaintiff Was Not Denied A Fair Hearing

The Plaintiff argues that he was denied a fair hearing (ECF No. 28-2, at 1-2), but this claim is easily dismissed.  Although he claims to have been "closed out of the process at every level of review," the gravamen of his argument is that Attorney Cicchiello allegedly "abdicated his obligation and [Plaintiff] was effectively denied the right to counsel" at the hearing before the ALJ. (*Id.* at 2.)  The Plaintiff complains that Attorney Cicchiello "filed no brief, made no argument . . . asked [him] no questions . . . did not object to the vocational expert's qualifications . . . [and] asked

---

[4]      In reviewing a final decision of the Commissioner, the district court "perform[s] an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).

the [vocational expert] no questions."[5]  (*Id.*)  He essentially argues that the ALJ's decision should be reversed because his lawyer ineffectively assisted him at the hearing.

The Plaintiff cites no genuine authority for his argument,[6] because there is none.  As the Second Circuit recently explained, because Social Security claims are civil actions, "in which [a claimant] does not face the prospect of imprisonment, . . . the Sixth Amendment right to counsel does not apply, and [an] ineffective assistance of counsel claim is not cognizable."  *Rotolo v. Berryhill*, 741 F. App'x. 851, 853 (2d Cir. 2018) (summary order) (ellipsis in original); *see also Servillo v. Berryhill*, No. 18-CV-7118 (HBP), 2019 WL 4594225, at *21-22 (S.D.N.Y. Sept. 23, 2019) (same).  Consistent with the Second Circuit's decision in *Rotolo*, this Court concludes that even if Attorney Cicchiello had been ineffective at the hearing, the Plaintiff could not obtain reversal of the ALJ's decision on that basis.

### B.     The ALJ Did Not Err in Failing to Consider the Plaintiff's Mental Impairments

The Plaintiff next argues that the ALJ "failed to consider [his] mental impairments."  (ECF No. 28-2, at 2.)  Despite not alleging any such impairment in his disability application (R. 333), the Plaintiff nonetheless contends that the record contained evidence of mental illness sufficient to trigger the ALJ's duty to evaluate that illness at Step Two and when formulating the RFC.  (ECF No. 28-2, at 2-14.)  The Court disagrees.

---

[5]     The Plaintiff is no longer represented by Attorney Cicchiello.  He is represented in this Court by Attorney Veronica Halpine.  (ECF No. 16.)

[6]     The Plaintiff cites an unreported Central District of California case, *Solorzano v. Astrue*, No. ED-CV-11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. Jan. 10, 2012) for the proposition that "[c]ounsel are not supposed to be potted plants at administrative hearings."  (ECF No. 28-2, at 3.) That may be true as far as it goes, but it does not go far enough– it does not explain why inaction on the part of a claimant's lawyer requires reversal of the ALJ's decision.  As the Commissioner points out, even the *Solorzano* court did not reverse on this basis.  (ECF No. 33, at 5.)

At Step Two of the sequential evaluation process, an ALJ must determine whether a claimant suffers from any "medically determinable" impairments. 20 C.F.R. § 416.921. If the claimant suffers from one or more such impairments, the ALJ then determines whether any of those impairments are "severe." 20 C.F.R. § 416.920(c). To be "severe," an impairment or combination of impairments must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities . . . ."[7] *See* 20 C.F.R. § 416.922.

A claimant can satisfy his burden to establish a "medically determinable" impairment through "medically acceptable clinical and laboratory diagnostic techniques from an acceptable medical source." *Woodard v. Berryhill*, No. 3:17-CV-1124 (RMS), 2018 WL 3536084, at *4 (D. Conn. Jul. 23, 2018) (internal quotation marks and brackets omitted). The evidence must "show the existence of a medical impairment(s) [that] results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b).

At the time the Plaintiff filed his application in 2015, "acceptable medical source[s]" included physicians and psychologists but did not include APRNs or physician assistants. 20

---

[7]    In the case of medically determinable mental impairments, the ALJ must evaluate their severity using a "special technique" that considers four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3). If the degree of limitation in these areas is "mild" or "none" as opposed to "moderate," "marked" or "extreme" the mental limitation is "generally considered not severe." 20 C.F.R. §§ 416.920a(c)(4)-(d)(1); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008). Diagnosis or treatment for a mental impairment, such as anxiety or depression, does not automatically "render [the] mental impairments severe or indicate that additional RFC limitations were warranted." *Torina v. Comm'r of Soc. Sec.*, No. 17-CV-1216 (FPG), 2019 WL 2325078, at *7 (W.D.N.Y. May 31, 2019); *see also Serianni v. Astrue*, No. 6:07-CV-250 (NAM), 2010 WL 786305, at *3 (N.D.N.Y. Mar. 1, 2010) ("A diagnosis of depression, without more, does not suggest that a plaintiff's depression severely impairs her performance of any major life activity. . . . The medical evidence must show that depression and anxiety preclude a plaintiff from performing basic mental work activities.") (citations omitted).

C.F.R. § 416.913 (2013).  Therefore, he could only establish a medically determinable mental impairment through "objective medical evidence," 20 C.F.R. § 416.921, from a provider such as a "licensed physician[] and licensed or certified psychologist[]."  *Wilson v. Saul*, No. 3:18-CV-01097 (WWE), 2019 WL 2603221, at *5 (D. Conn. Jun. 25, 2019); *see also Stopa v. Berryhill*, No. 3:17-CV-00934 (SRU), 2018 WL 4521938, at *11 (D. Conn. Sept. 21, 2018) ("In similar cases, the Second Circuit has determined that to meet the requirements of a mental disorder impairment 'the claimant must present reports from psychiatrists and psychologists, based upon clinical findings.'") (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

The Plaintiff argues that the record contained evidence of mental illnesses sufficient to trigger the ALJ's duty to evaluate them (ECF No. 28-2, at 13), but he cites no evidence from a then-acceptable medical source.  He points to an August 23, 2016 progress note (R. 1016), in which he was "[a]ssess[ed]" with "anxiety." (ECF No. 28-2, at 2.)  This "assessment," however, came from a physician assistant, not a physician or psychologist.  (R. 1016.)  Another note purports to memorialize a diagnosis of "[m]ajor depressive disorder, recurrent, moderate," but this note comes from APRN Sarah Yiznitsky, also not an acceptable medical source.  (R. 1346.)  The Court has reviewed all of the records cited by the Plaintiff and none were authored by a source that was an "acceptable medical source" in 2015.

The Plaintiff suggests that, even if the medical evidence did not trigger the ALJ's duty to evaluate his mental issues, his own obstreperous behavior did.  His brief cites treatment notes that document him "threaten[ing] his pain management specialist," "yelling and getting very angry" with orthopedic surgeons at UConn, and telling a Hartford Hospital nurse to "f*** off."  (ECF No. 28-2, at 8-10.)  His own counsel characterizes him as a "candidate for being punched in the face" (*id.* at 11), and acknowledges that he "frightened the hearing interpreter" and ultimately "got in a

rage and eloped at the third ALJ hearing." (*Id.* at 8, 11.)  The Plaintiff argues that the ALJ should have regarded these and other instances of anti-social behavior as "'signs and symptoms' of grave mental illness." (*Id.* at 13.)  Yet he cites no authority for the remarkable proposition that his own abusive behavior can constitute "acceptable medical evidence" sufficient to trigger the ALJ's duty of further inquiry, and the Court has not located any.  In summary, the Court concludes that the ALJ was not required to consider the Plaintiff's unalleged mental impairments at Step Two or in his RFC analysis.[8]

## C.   The ALJ's Light Work RFC Was Not Supported by Substantial Evidence.

The Plaintiff next argues that the ALJ "erred in his evaluation of [his] right ankle impairment." (ECF No. 28-2, at 14.)  His precise argument is difficult to extract from among his stream-of-consciousness recitations of the medical record and *ad hominem* attacks on the ALJ and

---

[8]   The Plaintiff suggests that even if the record did not contain enough evidence to trigger the ALJ's duty to evaluate the severity of his mental illness at Step Two—or to consider that illness in formulating the RFC—the ALJ had a duty to develop the record further to see if such evidence existed.  (ECF No. 28-2, at 14.)  The Court disagrees.  To hold that the ALJ had such a duty in this instance would be to hold that the ALJ must develop a record (a) with respect to impairments that were neither alleged in the disability application (R. 333) nor testified to by the claimant at the hearing (*see* R. 165-73 and 95-105); (b) with respect to impairments that are unsupported by any acceptable medical evidence from any acceptable medical source; (c) in a case where the Plaintiff was represented by counsel at the hearing level, and in which counsel agreed that the record was complete (R. 164); and (d) with respect to an issue on which the Plaintiff bears the burden of proof. While there is authority for some of these individual propositions, *see, e.g., Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (noting that an ALJ may have a duty to develop the record "[e]ven when a claimant is represented by counsel"), the Plaintiff cites no case in which the ALJ was held to have a duty to develop the record when all four of these considerations were present.  To the contrary, in cases where the evidence before the ALJ was as slender as it was here, courts have typically declined to find such a duty.  *See, e.g., Stopa*, 2018 WL 4521938, at *11 ("Because there is little indication in the record suggesting a disabling mental disorder during the period in question, the ALJ was not obligated to develop the record further."); *Quinn v. Colvin*, 199 F. Supp. 3d 692, 707 (W.D.N.Y. 2016) ("That Plaintiff ultimately bears the burden in proving a disability coupled with the case law suggesting that an ALJ's duty to develop the record does not extend to situations like this, where a disability was neither alleged nor was there substantial evidence of the claimed disability in the record, leads to the conclusion that the ALJ here did not err by not obtaining Dr. Matala's records in relation to Plaintiff's anxiety.").

his own medical providers.  (*E.g., id.* at 16 (charging his primary care provider with "deliberately" adding harmful comments to his medical record because he "had basically flipped her off"); *id.* at 17 (accusing the ALJ of "playing fast and loose with . . . the facts").)  The Court will interpret it as an argument that the light work RFC was not supported by substantial evidence.

An RFC reflects the maximum amount of work a "claimant can perform in light of her physical or mental limitations."  20 C.F.R. § 416.945(a)(1).  An RFC is assessed "based on all the relevant evidence" in the record.  *Id.*  An RFC determination must address all of a claimant's medically determinable impairments, including those found to be "not severe" at Step Two.  20 C.F.R. § 416.945(a)(2).

A "light work" RFC implicates the second least strenuous of the SSA's five exertional levels.  *See* 20 C.F.R. § 416.967.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  A job that requires these lifting capabilities qualifies as "light work" "when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*  A Social Security ruling explains that "most light jobs . . . require a person to be standing or walking most of the workday."  SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983); *see also Burton v. Colvin*, No. 6:12-CV-6347 (MAT), 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) (remanding in part because "no acceptable or other medical source opined that [Plaintiff] was able to stand or walk most of the workday, notwithstanding her various impairments").

In determining any RFC with respect to a pre-March 27, 2017 claim—whether  "light work" or otherwise—the SSA ordinarily considers medical opinion evidence.  The relevant Social Security regulation states that the SSA "consider[s] opinions from medical sources on issues such

as . . . [the claimant's] residual functional capacity." 20 C.F.R. § 416.927(d)(2) (2013).  Indeed, some courts have held that under that version of the regulation, "an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Staggers v. Colvin*, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (internal quotation marks and citations omitted).

An absence of supporting medical opinion can be excused, however, when the record otherwise "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 34 (2d Cir. 2013) (summary order).  Put differently, a medical record that lacks treating source opinions can nevertheless be "sufficient" when its other evidence permits an assessment of the claimant's impairments and residual functional capacity.  "The critical point" is that the record must contain "the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature" of the claimant's impairments and "their impact on her RFC." *Sanchez v. Colvin*, No. 13-CIV-6303 (PAE), 2015 WL 736102, at *8 (S.D.N.Y. Feb. 20, 2015).

Applying the foregoing principles to this case, the Plaintiff's challenge to the light work RFC may be rephrased as follows:  Did the ALJ have some substantial basis for concluding that, notwithstanding the Plaintiff's severe and non-severe impairments,[9] he could lift twenty pounds at a time, frequently lift up to ten pounds, and stand or walk for most of the workday?  The Court concludes that the ALJ had no such basis for two principal reasons.  First, no medical source opined

---

[9]     As noted above, at Step Two the ALJ found that the Plaintiff's "fracture of the right lower extremity status-post surgical intervention" was a severe impairment.  (R. 76.)  He also found that the Plaintiff had the non-severe but nonetheless medically determinable impairments of "degenerative disc disease of the cervical and lumbar spine, bilateral knee pain and left shoulder pain." (*Id.*)

that the Plaintiff retained these capabilities.  The only medical opinions in the record indicated that

the Plaintiff *could not* lift, stand, and walk to the level required by 20 C.F.R. § 416.927(b), and

while the ALJ was not necessarily required to accept these opinions, neither was he entitled to

substitute his own opinion that the Plaintiff *could* do these things.  Second, the lack of supporting

medical opinion cannot be excused in this case because the record did not contain other "sufficient

evidence from which an ALJ [could] assess the petitioner's" RFC.  *Tankisi*, 521 F. App'x at 34.

### 1.      The light work RFC was unsupported by medical opinion.

At the time the ALJ issued his decision, there were three medical source statements in the

record.[10]  The first is a "physical capabilities evaluation" from the Plaintiff's podiatrist, Jose

Castiblanco, DPM, dated November 28, 2016.  (R. 965-67.)  The second is a medical source

statement from Sarah Yiznitsky, APRN, dated June 23, 2018.  (R. 1137-42.)  The third is a medical

source statement from the Plaintiff's pain management provider, Namigly Comeau, PA-C, dated

September 14, 2018.  (R. 1433-38.)

None of these opinions confirm that the Plaintiff can lift twenty pounds, and lift ten pounds

frequently.  Dr. Castiblanco's opinion states that the Plaintiff can lift "1-10 lbs." only "rarely."[11]

(R. 965.)  APRN Yiznitsky opined that the Plaintiff could *never* lift twenty pounds, and he could

lift weights up to ten pounds only "[o]ccasionally."  (R. 1137.)  PA Comeau likewise opined that

---

[10]     The Plaintiff claims there are "five treating physician opinions in the record . . . ."  (ECF
No. 28-2 at 19.)  But two of them were added to the record at the Appeals Council stage.  (*See* R.
198-204 (statement of APRN Sarah Yiznitsky, submitted after ALJ decision); R. 13-19 (statement
of APRN Ashley Mills, likewise submitted after ALJ decision).)

[11]     There is an inconsistency in Dr. Castiblanco's report, because while he opined that the
Plaintiff could lift light weights of one to ten pounds only "rarely," he also opined that the Plaintiff
could lift heavier weights of eleven to twenty pounds "occasionally"—that is, more frequently than
he could lift the lighter weights.  (R. 965.)  So far as the record discloses, the ALJ did not ask Dr.
Castiblanco to clarify the inconsistency.  In any event, the important point for present purposes is
that Dr. Castiblanco did not opine that the Plaintiff could lift up to ten pounds "frequently," as a
light work RFC would require.  20 C.F.R. § 416.967(b).

the Plaintiff could not lift twenty pounds at all, and he could only occasionally lift up to ten.  (R. 1433.)  Similarly, none of the three opinions confirm that the Plaintiff can stand or walk for most of a workday.  Dr. Castiblanco stated that the Plaintiff could stand for "max 1/2 hour," "< 1/2 [hour] w/ frequent breaks."  (R. 965.)  APRN Yiznitsky opined that he could stand and walk for no more than three hours in an eight-hour workday.  (R. 1138.)  PA Comeau stated that he could stand and walk for no more than one hour in an eight-hour shift.  (R. 1434.)

To be sure, the ALJ was not required to accept these opinions without question.  Even under the pre-March 27, 2017 regulation, the opinion of a claimant's treating physician is entitled to controlling weight only "so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)) (brackets omitted).  But even if the opinions that the Plaintiff *cannot* lift, stand, and walk had been unsupported by the clinical findings, that alone would not justify the ALJ in concluding that the Plaintiff *can* lift, stand and walk to the level required by 20 C.F.R. § 416.967(b).

The case of *Mariani v. Colvin* illustrates this point.  567 F. App'x 8, 10 (2d Cir. 2014) (summary order).  In *Mariani*, a treating physician opined that the claimant had "no use" of his dominant hand.  (*Id.*).  An ALJ found "substantial evidence that was inconsistent with Mariani's treating physician's opinion," and therefore "declin[ed] to give his opinion controlling weight."  *Id.*  The ALJ then determined that the claimant "retained a RFC to perform fine manipulation/fingering 50% of the time with his dominant right upper extremity during a typical work day," and consequently he found that the claimant "could perform certain sedentary occupations, and thus was not disabled under the" Social Security Act.  *Id.* at 9 (internal quotation marks omitted).  On appeal, the Second Circuit acknowledged that the ALJ "did not err in declining

to give [the physician's] opinion controlling weight." *Id.* at 10. "However, the ALJ was not then permitted to 'arbitrarily substitute his own judgment for competent medical opinion.'" *Id.* (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). However questionable the doctor's opinion might have been, there was no "substantial evidence for the ALJ's finding that Mariani had an RFC to perform fine manipulation/fingering fifty percent of the time." *Id.* at 11.

This case is analogous to *Mariani*. Here, the ALJ no doubt had reasons for questioning the three providers' opinions; among others things, none of the three providers expressly tied their opinions to specific findings or test results, nor did they account for the undisputed fact that the Plaintiff only sometimes "ambulat[ed] with an antalgic gait" and did "not appear to be in distress at appointments." (R. 80.) Yet *Mariani* illustrates that while these sorts of considerations may support giving less than controlling weight to an opinion that a claimant *does not* retain a certain capability, by themselves they do not permit the ALJ to conclude that he *does*. *Mariani*, 567 F. App'x at 10; *see also Burton*, 2014 WL 2452952, at *10 ("[N]o acceptable or other medical source opined that [the claimant] was able to stand or walk most of the workday, notwithstanding her various impairments.").

### 2. The record does not otherwise contain substantial evidence in support of the RFC determination.

Of course, the Second Circuit also explains that an RFC is not *per se* invalid for lack of supporting medical opinion. "[R]emand is not always required when" the record does not include supporting opinions, so long as it otherwise "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi*, 521 F. App'x. at 34; *see also Monroe v. Comm'r of Soc. Sec.*, 676 Fed. App'x 5, 8-9 (2d Cir. 2017) (summary order) (finding ALJ did not err in rejecting opinion of treating psychologist because the record contained "years' worth"

of the provider's "contemporaneous treatment notes," which contained "assessments of [the claimant's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity").

In this case, the Plaintiff's medical records do not illuminate how his physical impairments affect his "ability to work, or [his] ability to undertake [his] activities of everyday life."[12] *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order). Take, for example, the medical records from the Plaintiff's treatment with Dr. Castiblanco. The Plaintiff first met with Dr. Castiblanco on August 9, 2016. (R. 1121.) During that session, Dr. Castiblanco recorded the Plaintiff's subjective reports of pain and the results of a physical exam, as well as his own diagnoses and treatment plans. (R. 1121-1124.) This general pattern is repeated in records from the Plaintiff's seven additional visits with Dr. Castiblanco. (R. 970, 973, 1008, 1013, 1105, 1108, 1118.) Dr. Castiblanco also discusses the findings of diagnostic imaging, such as x-rays and MRIs. (*See*, *e.g.*, R. 1121, 1105.) The Plaintiff is also noted to use a cane for ambulation. (*See*, *e.g.*, R. 970-973, 1008-1010.) None of these records, however, equate to nuanced descriptions and assessments of his functional abilities.

Records from other providers relating to the Plaintiff's severe and non-severe impairments are similarly deficient. The Plaintiff was referred to Orthopedic Associates of Hartford for visits on May 26, 2016 and April 19, 2018. (R. 1132-1135.) Records from both visits primarily reflect the diagnoses and treatment recommendations, and the results of physical examinations. (*Id*.) The

---

[12]  The medical records in this case primarily consist of emergency room visits at Hartford-area hospitals for a variety of physical maladies, many of which are at issue in this case. (*See*, *e.g.*, R. 914, 991, 1048, 1075, 1085, 1096, 1100, 1147, 1155, 1373) (records from ER visits at Hartford, St. Francis and Trinity hospitals.) In addition, there are records from the Plaintiff's ongoing medical providers, such as Dr. Castiblanco. (R. 970, 973, 1008, 1013, 1105, 1108, 1118.) There are also records from visits with specialists, to whom the Plaintiff was referred by his treating providers. (*See*, *e.g.*, R. 1132-1135) (records from Orthopedic Associates of Hartford).

record from the May 2016 visit for the Plaintiff's ankle impairment contains a notation that the doctor "discussed how this would affect his work" but provides no further description into what this actually meant.  (R. 1133.)  The records from the April 2018 visit contain a diagnosis of "chronic bilateral knee pain" as well as a notation that the physician was "not sure why [the Plaintiff] has such significant pain" and a finding that "structurally, his knees are relatively normal."  (R. 1135.)  Records from Dr. David Burstein, an orthopedist who treated the Plaintiff's ankle impairment, contain similar notations.  (R. 886-888, 923.)

Similarly, the records contain diagnoses from several different providers of conditions such as such as chronic knee pain, neck pain, shoulder pain, back pain, degenerative joint disease of cervical spine and crevicular radiculopathy.  (R. 992, 1006, 1016, 1150, 1349, 1353, 1356, 1361, 1367.)  There are also a significant number of narrative reports from diagnostic imaging studies capturing both the Plaintiff's severe and non-severe impairments.  (*See*, *e.g.*, R. 779, 876-878, 949, 1033, 1039, 1049, 1097-1098, 1158, 1170, 1363).  These images were taken in connection with the Plaintiff's various ER visits (*e.g.*, R. 779, 1097-98, 1158, 1170), as well as upon request of the Plaintiff's treating providers.  (R. 876-878, 949, 1033, 1039.)  These records, however, likewise fail to contain assessments as to how these impairments will impact the Plaintiff's ability to perform work-related functions.

The medical records in this case differ from the records in cases cited by the Commissioner.  (ECF No. 33, at 10.)    For example, in the Commissioner's cited case of *Monroe*, the Second Circuit concluded that the ALJ did not err by rejecting the opinion of a treating psychologist because the RFC determination was supported by "years' worth" of the provider's "contemporaneous treatment notes."  676 Fed. App'x at 8.  These treatment notes contained "assessments of [the claimant's] mood, energy, affect, and other characteristics relevant to her

ability to perform sustained gainful activity." *Id.* The notes also discussed the claimant's "social activities *relevant to her functional capacity*—such as snowmobile trips, horseback riding, and going on multiple cruise vacations." *Id.* (emphasis added). The assessments of the claimant's mood and descriptions of social activities were particularly important in *Monroe* because the Plaintiff alleged disability on the basis of bipolar disorder. *Id.* at 6. This information contradicted the psychologist's opinion that the claimant "had little ability to deal with stress or the public and was limited in behaving in a stable manner in social situations . . . ." *Id.* at 8.

In contrast to *Monroe*, the medical records here, which largely consist of the results of physical evaluations and diagnostic imaging revealing "mild" findings, do not necessarily translate into the specific ability to perform work-related functions. *See Kurlan v. Berryhill*, No. 3:18-CV-00062 (MPS), 2019 WL 978817, at *4 (D. Conn. Feb. 28, 2019) (finding that phraseology such as "full motor strength" and "normal gait" does not "necessarily equate to intact functional abilities of the specific nature detailed in the RFC formulation—at least not without a supporting medical opinion that says so") (internal quotation marks and ellipses omitted). Courts have therefore distinguished *Monroe* from circumstances where, as here, the ALJ did not rely on "treatment notes with any vocational or functional relevance when he formulated the RFC." *Morales v. Colvin*, No. 3:16-CV-0003 (WIG), 2017 WL 462626, at *3 (D. Conn. Feb. 3, 2017); *see also Kurlan*, 2019 WL 978817, at *4 (finding that it was "unclear" how medical records supported ALJ's conclusion that plaintiff could "perform sedentary work but only occasionally climb, balance, stoop, kneel, crouch, and crawl") (internal quotation marks and brackets omitted); *Cote v. Berryhill*, No. 3:17-CV-095 (WWE), 2018 WL 1225543, at *4 (D. Conn. Mar. 9, 2018) ("Although the medical record is lengthy, plaintiff's capacity to engage in light work employment is not resolved by the treatment notes."); *Blackert v. Berryhill*, No. 3:16-CV-1327 (JCH), 2017 WL 3168580, at *6 (D. Conn. Jul.

26, 2017) (holding that, in the in the absence of a treating physician opinion, the record did not contain substantial evidence that the plaintiff could satisfy lifting requirements of "medium work").

The Plaintiff's activities of daily living also fail to provide sufficient evidence in support of the RFC determination. In formulating an RFC, the ALJ is of course entitled to consider "descriptions and observations" made by a claimant about her own limitations. 20 C.F.R. § 416.945(a)(3). Reports of these daily activities, however, must "offer insight on how plaintiff's impairments affect her ability to work and undertake activities of daily life." *Compare Keovilay v. Berryhill*, No. 3:19-CV-0735 (RAR), 2020 WL 3989567, at \*4-5 (D. Conn. Jul. 15, 2020) (affirming ALJ's RFC determination, which was based on opinions by examining and non-examining consultants as well as Plaintiff's statements that she "walks her dog for up to an hour in the morning and an hour at night, walks three to four times a week, performed household chores, and cared for her boyfriend's disabled mother") *with Newton v. Berryhill*, No. 3:18-CV-1244 (MPS), 2019 WL 4686594, at \*4 (D. Conn. Sept. 26, 2019) (finding that plaintiff's activities of "self-care," trying to "help out with his grandson," driving his "grandson to work a few times a week," and "prepar[ing] light meals, sweep[ing], and go[ing] for short walks" did not "constitute substantial evidence that his functional abilities are in excess of those alleged, and in any event do not support specific findings that he can" engage in light work) *and Blackert*, 2017 WL 3168580, at \*7 (finding that "a trip to Florida, going out to dinner, going camping with her boyfriend once, exercising, and completing chores" was of "little probative value without knowing more details about the activities" because "while these activities may indicate that [the plaintiff] is capable of some degree of physical exertion, they say almost nothing about her capacity to perform medium work").

In this case, the ALJ based his RFC determination in part upon the Plaintiff's "self-reported activities of daily living." (R. 80.) These activities included the Plaintiff's testimony that he could "walk around throughout the day and utilize public transportation"[13] and was "able to cook when necessary, as well as shop for his own personal needs when necessary." (*Id*.) The ALJ also discussed the Plaintiff's ability to walk in rejecting Dr. Castiblanco's opinion. (*Id*.) The ALJ found that Dr. Castiblanco's opinion that the Plaintiff could not walk or stand for more than thirty minutes was undermined by the Plaintiff's testimony that "he must walk constantly due to his lack of stable housing." (*Id*.) The ALJ reasoned that the Plaintiff's statements indicated he was "capable of standing and walking for more than thirty minutes." (*Id*.) Finally, the ALJ noted that the Plaintiff "traveled to Puerto Rico for extended periods at least twice during the relevant period." (*Id*.)

These daily activities, however, do not support the RFC determination. For example, the ALJ found that the Plaintiff's was capable of "light work" which includes "lifting [up to] 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.927(b). Without additional information, nothing about the cited daily activities supports the conclusion that he can lift twenty pounds and frequently lift and carry ten. In this respect, the ALJ's discussion of the Plaintiff's activities of daily living is similar to the administrative law judges' discussions in *Newton* and *Blackert*—they do not speak to the Plaintiff's capacity to perform "light work" or the functional limitations caused by his physical impairments. This is especially problematic as the Plaintiff's use of a cane with one hand would directly impact his ability to lift and carry objects. *See Clyburn v. Berryhill*, No. 16-CV-1029-FPG, 2017 WL

---

[13]    While the ALJ does not directly quote the Plaintiff's hearing testimony that supports this statement, walking was discussed at both the September 6, 2018 hearing and the September 18, 2018 hearing. (R. 96-99, 101-102, 104-105, 168-169.)

6014452, at *4 (W.D.N.Y. Dec. 5, 2017) ("If Clyburn needs to use a cane, it means that at least one hand is not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal."). Other courts have held that failure to make an explicit finding as to a Plaintiff's ability to lift and carry while using a cane to ambulate was error and grounds for remand. *See, e.g., Reed v. Berryhill*, No. 3:16-CV-1856 (WIG), 2017 WL 4613190, at *2-3 (D. Conn. Oct. 16, 2017) (concluding the ALJ erred by not making a "specific finding on Plaintiff's ability to lift and carry while using a cane to ambulate," specifically observing "both opinions found Plaintiff's ability to lift and carry was less than what light work requires"); *Yulfo-Reyes v. Berryhill,* No. 3:17-CV-02015 (SALM), 2018 WL 5840030, at *9 (D. Conn. November 8, 2018) (holding that "the ALJ erred when he failed to determine whether the use of those assistive devices was medically necessary, or to otherwise evaluate and/or incorporate plaintiff's need for an assistive device into the RFC determination"); *McCants v. Astrue*, No. 3:09-CV-01830 (VLB), 2010 WL 4363423, at *5 (D. Conn. Oct. 21, 2010) (finding that the "ALJ should have addressed her ability to lift or carry" when finding that "the plaintiff could perform light work while using a cane and having the option of sitting or standing").

Accordingly, the Court concludes that the Plaintiff's medical records and activities of daily living do not constitute "sufficient evidence from which" the ALJ could determine his RFC. *Tankisi*, 521 F. App'x at 34. Remand is therefore warranted. *See Kurlan*, 2019 WL 978817, at *4 (finding that the plaintiff's medical records, hearing testimony and activities of daily living did not provide substantial evidence in support of RFC determination where the ALJ rejected medical opinions in the record); *see also Dowling v. Saul*, No. 3:19-CV-01170 (WIG), 2020 WL 2079113, at *7 (D. Conn. Apr. 30, 2020) ("Because there is *no* medical source opinion or functional assessment supporting the ALJ's finding that [the claimant] can perform light work with

limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate."); *Delgado v. Berryhill*, No. 3:17-CV-0054 (JCH), 2018 WL 1316198, at *7-10 (D. Conn. Mar. 14, 2018) (same).

The ALJ "should develop the record as necessary to obtain opinions as to the Plaintiff's functional limitations from [his] treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations." *Dowling*, 2020 WL 2079113, at *7; *see also Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap . . . ."). The Commissioner on remand "should employ whichever of these methods are appropriate to fully develop the record as to [the Plaintiff's] RFC." *Dowling*, 2020 WL 2079113, at *7.

## IV.   CONCLUSION

Because the Court is remanding this matter for further development of the record, it does not reach the Plaintiff's remaining arguments.  On remand, and after further development of the record and a new hearing, the ALJ shall consider the other claims of error not addressed in this decision.  *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *see also Moreau v. Berryhill*, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

The Court acknowledges that the incompleteness of the record on the Plaintiff's functional limitations may be due, in part, to his obstructionist behavior before and at the hearing.  (*See, e.g.,*

R. 98-102 (hearing transcript documenting Plaintiff's resistance to answering simple questions about where and how far he walked each day); Def.'s Stmt. of Mat. Facts, ECF No. 33-1, ¶ 16 (documenting Plaintiff's failure to attend consultative evaluations).)  The Court also makes clear that it has accepted none of the Plaintiff's *ad hominem* attacks on the ALJ, who appears to have been trying his level best with a difficult claimant.  To the extent that it is in this Court's power to do so, it urges the Plaintiff to cooperate fully with all proceedings on remand, including but not limited to providing full and candid answers to any questions the ALJ may pose at the rehearing and to attending any consultative evaluation that the ALJ may order.  The Court directs the Plaintiff's attention to the many cases holding that claimants cannot complain about holes in the record for which they themselves are responsible.  *See, e.g., Faucette v. Comm'r of Soc. Sec.*, No. 13-CV-4851 (RJS) (HBP), 2015 WL 5773565, at *18-19 (S.D.N.Y. Sept. 30, 2015); *Crawford v. Astrue*, No. 13-CV-6068P, 2014 WL 4829544, at *22 (W.D.N.Y. Sept. 29, 2014).   The Clerk of the Court is respectfully instructed that, if any party appeals to this Court the decision made after remand, any subsequent Social Security appeal is to be assigned to the undersigned.

For the reasons stated, the Plaintiff's motion to reverse (ECF No. 28) is **GRANTED IN PART AND DENIED IN PART**[14] and the Commissioner's motion to affirm (ECF No. 33) is

---

[14]     To the extent that the Plaintiff's motion seeks remand solely for calculation of benefits, as opposed to remand for rehearing after further development of the record, that motion is **DENIED.** Remand solely for calculation of benefits is appropriate only when the record contains "persuasive proof" of the claimant's disability, such that "remand for further evidentiary proceedings would serve no purpose."  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  Although the Court is remanding the Plaintiff's case, his entitlement to disability benefits is anything but clear. Therefore, an order remanding the case solely for the calculation of benefits would be inappropriate.

**DENIED.**  The Commissioner's decision is **VACATED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  (ECF No. 14.)  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.  It is so ordered.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge